**This document was signed electronically on June 30, 2017, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: June 30, 2017**



**ALAN M. KOSCHIK**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | Case No. 14-52328 |
| MARK D. JEFFERS, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Judge Alan M. Koschik |
| | ) | |

## MEMORANDUM DECISION ON MOTION FOR RELIEF FROM STAY

Before the Court is the Motion for Relief From Stay to Proceed in Domestic Relations Court (Docket No. 79) (the "Motion") filed by Lisa Jeffers (the "Movant"), the former wife of debtor-respondent Mark D. Jeffers (the "Debtor"). The Movant asks the Court to lift the automatic stay, pursuant to 11 U.S.C. § 362(d), to allow her to proceed in state court to obtain a qualified domestic relations order ("QDRO") entitling her to distribution of certain funds from her former husband's retirement plans, including a "Cash Balance Plan through Hewitt Associates" and his 401(k) plan with Frontier Communications. For the reasons set forth herein, the Motion will be granted.

## JURISDICTION

This Court has jurisdiction to enter a final judgment in this contested matter pursuant to 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) and (O).

## FACTUAL BACKGROUND

The material facts are neither complex nor disputed.

On August 8, 2012, the Lorain County, Ohio Court of Common Pleas' Domestic Relations Division entered a final decree of divorce between the Debtor and the Movant. Among other property division provisions, that decree provided as follows:

> [The Movant] shall receive a Qualified Domestic Relations Order entitling [her] to an interest in the [Debtor's] Cash Balance Plan through Hewitt Associates. This plan shall be evaluated by QDRO Consultants and any necessary Qualified Domestic Relations Order shall be prepared by QDRO Consultants . . . . [The Movant's] interest shall be an amount equal to the actuarial equivalent of fifty percent (50%) of the marital portion of the [Debtor's] accrued benefit under the Plan as determined by QDRO Consultants.
>
> . . . .
>
> [The Debtor] shall retain as his own, free and clear from any claim of [the Movant], his 401 (K) with Frontier Communications except that there shall be transferred from the Frontier Communications 401(K) the sum of Thirty-Three Thousand Nine Hundred Twelve and 00/100 Dollars ($33,912.00) to equalize the division of [the Movant's] IRA [with Fidelity] and [the Debtor's] 401(K). [The Movant's] share of $(33,912.00) shall be credited with gains and debited with losses which occur between the date of the filing of this Judgment Entry Decree of Divorce and the date of transfer by the Plan Administrator.

While it is unclear whether any such order was ever prepared during the two years between the entry of the divorce decree and the Debtor's chapter 13 bankruptcy filing on September 4, 2014, the parties agree that no qualified domestic relations order (QDRO) was ever entered by the state court.

On October 22, 2014, the Movant filed a proof of claim that did not include amounts related to the division of the Debtor's retirement plans. The Movant's proof of claim did reference an unknown amount of "stock," apparently in reference to a separate obligation under the divorce decree to divide equally certain Frontier Communications stock options. The claims bar date passed on January 14, 2015. The Court confirmed the Debtor's chapter 13 plan on October 23, 2015.

On December 14, 2015, the Movant filed the instant motion for relief from stay authorizing her to proceed in domestic relations court for the purposes of allowing that court to enter one or more QDROs necessary to effectuate a division of the Debtor's retirement accounts, as well as to receive a share of the Frontier Communications stock options and $4,000 in connection with the sale of the marital residence. (Mot. at 2.) The Debtor filed a response that simply registering his objection. (Docket No. 82.) The Court held a preliminary hearing on January 7, 2016. At the hearing, the Court denied the motion in part, denying it to the extent it dealt with the proceeds from the sale of the marital residence, since that issue had been previously resolved by an agreed order. The Court's order (Docket No. 83) also scheduled further briefing on the issue of the Movant's request to proceed to a QDRO in domestic relations court, as well as on the issue of the Frontier Communications stock options. Pursuant to that order, and the Court's January 26, 2016 Scheduling Order (Docket No. 84), the Movant submitted a brief in support of her Motion (Docket No. 87) on February 29, 2016, and the Debtor submitted a brief in opposition (Docket No. 88) on March 31, 2016.

The Court held oral argument on the Motion on April 7, 2016. At that hearing, the Movant voluntarily withdrew the Motion with respect to the Frontier Communications stock options. The Court heard the arguments of both parties and then scheduled further supplemental

briefing before taking the matter under advisement.  (Docket No. 89.)  The Movant filed her

supplemental brief in support (Docket No. 91) on May 6, 2016.  The Debtor filed his

supplemental brief in opposition (Docket No. 92) on May 27, 2016.  The Court then took the

matter under advisement.

## LEGAL ANALYSIS

**A.      Standard For Relief From Stay Pursuant to 11 U.S.C. § 362(d).**

      The Movant's Motion seeks relief from the automatic stay pursuant to Section 362(d) of

the Bankruptcy Code so that she may return to the state domestic relations court and obtain a

QDRO in order to obtain a share of the Debtor's retirement accounts consistent with the

prepetition divorce decree in the parties' divorce action notwithstanding the Debtor's pending

chapter 13 bankruptcy case.  While motions for relief from stay are common before this Court,

the Motion is not a typical one.  Instead of a secured lender seeking relief so as to pursue its

collateral during the pendency of a bankruptcy case, here the Movant argues that she has

equitable rights to certain property whose legal title is held by the Debtor.

      The Movant seeks relief "for cause," pursuant to 11 U.S.C. § 362(d)(1), which provides

that relief from the stay may be granted "for cause, including the lack of adequate protection of

an interest in property of such party in interest."  "Cause" is not defined by the Bankruptcy Code.

*In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002).  It may include lack of adequate protection

as set forth in the statute, but that is not the only basis for finding cause to grant relief from stay.

3 COLLIER ON BANKRUPTCY ¶ 362.07[3] (16th ed. 2013).  Cause may exist in a wide variety of

circumstances, such as when nonbankruptcy litigation affecting multiple parties was ready for

trial when the bankruptcy stay was imposed, *In re Castlerock Properties,* 781 F.2d 159 (9th Cir.

1986), or to allow an embezzlement victim to pursue embezzled property held by a debtor.  *In re*

- 4 -

*Newpower,* 233 F.3d 922, 935 (6th Cir. 2000) (Batchelder, J., concurring, but writing for the court on the issue of relief from stay). As noted by the Movant in her supplemental brief (Docket No. 91), the determination of cause for relief from stay in these peculiarly specific circumstances lies with the bankruptcy court's discretion on case-by-case basis. *In re Laguna Associates Ltd. Partnership,* 30 F.3d 734, 737 (6th Circ. 1994); *In re J&M Salupo Development Co., Inc.,* 388 B. R. 809, 812 (Bankr. N.D. Ohio 2008). "'[C]ause' is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." *In re River Estates, Inc.,* 293 B.R. 429, 433 (Bankr. N.D. Ohio 2003) (citation omitted). "In determining whether cause exists the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *In re Combs,* 435 B.R. 467, 471 (Bankr. E.D. Mich. 2010) (quotation omitted).

Here, the question of relief from stay depends ultimately on whether the Movant does or does not have a legal or equitable right to a portion of the Debtor's retirement funds superior to that of the Debtor, or whether any claims she holds against the Debtor have sufficient validity and priority so as to justify relief from stay. The answer to the Motion's ultimate question, therefore, depends on the Court's analysis of the party's substantive rights to the retirement accounts in light of the divorce decree, the bankruptcy filing, the Movant's proof of claim, and the confirmation of the Debtor's chapter 13 plan.

**B.      The Movant's Interest in the Debtor's Retirement Accounts are Property Rights, Not Claims of a Creditor.**

While outcomes in bankruptcy cases largely depend on the provisions of the Bankruptcy Code, many aspects of bankruptcy cases, frequently critical aspects, depend on applicable state law. Most fundamental among those is that property interests are created and defined by state

- 5 -

law and bankruptcy courts do not disturb them unless some federal interest requires a different result. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

This case involving the Debtor's ex-wife's rights to portions of the Debtor's retirement accounts depends largely on the holding in *In re McCafferty: McCafferty v. McCafferty,* 96 F.3d 192 (6th Cir. 1992). In *McCafferty*, the lower courts had ruled that because the non-debtor spouse's rights under prepetition divorce decree was not a support obligation excepted from discharge pursuant to 11 U.S.C. § 523(a)(5),[1] and instead represented a "property division," the spouse's right to the debtor's retirement account was dischargeable. However, the Sixth Circuit's decision to reverse in favor of the nondebtor spouse turned on a more fundamental legal point than the dischargeability rules in 11 U.S.C. § 523: While the debtor-husband's obligation to turn over the pension assets was not in the nature of support, *under Ohio law it was also not even in the nature of a "debt."* The divorce decree did not create a debt from the ex-husband to the ex-wife; it created a property interest in favor of the wife in the assets awarded to her by that decree. *McCafferty* at 197. Furthermore, the divorce decree, by operation of Ohio law, impressed a constructive trust upon such property, imposing a duty to convey the property to the spouse now entitled to it. *Id.* at 198.

While not using the phrase "constructive trust," the Supreme Court of Ohio had expressly stated, in a decision shortly before the Sixth Circuit decided *McCafferty*, that a separate property interest in a pension awarded by a final decree of divorce would not become property of the bankruptcy estate of the other spouse if he were to file a bankruptcy petition. *Erb v. Erb*, 75

---

[1] The law applicable to the *McCafferty* case predated the adoption of the Bankruptcy Reform Act of 1994, Pub. L. 103-394, 108 Stat. 4106, which included the addition of 11 U.S.C. § 523(a)(15) to the Code. Section 523(a)(15) causes domestic relations claims other than support claims to be nondischargeable as well, at least in chapter 7 cases. The impact of this amendment on *McCafferty's* continual vitality and applicability to this case is discussed in Section D, *infra*.

- 6 -

Ohio St.3d 18, 22 n.3 (1996); *see also McCafferty* at 199 (analyzing *Erb*). While state courts might not have the power to bind federal bankruptcy courts to a particular interpretations of the Bankruptcy Code, they *are* the final authorities on the common law of property in their own states. The Sixth Circuit cited *Erb* as providing strong support for its conclusion that the nondebtor-spouse was the "equitable owner" of the portion of the pension benefits she had been awarded prepetition. *McCafferty* at 199. Since property in which the debtor holds only legal title, but not an equitable interest, becomes property of the estate only to the extent of the bare legal title, 11 U.S.C. § 541(d), the nondebtor ex-spouse retained her equitable ownership of the assets awarded to her notwithstanding the bankruptcy.

The facts of this case are identical in all material respects: a divorce decree was entered prior to the bankruptcy awarding one spouse an interest in the pension assets of the other as a property settlement; the obligor spouse filed for bankruptcy after the entry of the divorce decree but before distributing the pension assets; the debtor now seeks to discharge the obligation to consummate the property settlement. As in *McCafferty*, the prepetition divorce decree created a separate property interest in the assets in the person of the nondebtor ex-spouse, and the nondebtor ex-spouse's equitable interest in the assets, by operation of 11 U.S.C. § 541(d), simply never became property of the bankruptcy estate.

Therefore, pursuant to *McCafferty* (and *Erb*), the Movant had a separate property interest in the portion of the Hewitt Associates Cash Balance Plan and the Frontier Communications 401(K) plan awarded to her via the final decree of divorce entered prepetition. She was the equitable owner of those funds at the time the Debtor filed his petition, and the beneficiary of a constructive trust imposed on those assets by operation of Ohio law. By operation of 11 U.S.C. § 541(d), that equitable interest never became property of the Debtor's bankruptcy estate.

- 7 -

Moreover, pursuant to Ohio law, the Movant's interest in those retirement accounts are not property of the Debtor.

**C.     The Confirmation of the Debtor's Chapter 13 Plan is Immaterial to the Relief From Stay Motion.**

The Debtor further argues that the Movant's motion for relief from stay is barred by the prior confirmation of his chapter 13 plan and Section 1327 of the Bankruptcy Code, which provides that the "provisions of a confirmed plan bind the debtor and each creditor," 11 U.S.C § 1327(a), and that except as otherwise provided in the plan or the confirmation order, confirmation of a chapter 13 plan vests all property of the estate in the debtor free and clear of any claim or interest of any creditor provided for by the plan. 11 U.S.C § 1327(b)-(c).  The Debtor invokes the holding of *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010), which states that where "a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate," *id.* at 276, and will therefore be bound by the plan.

The central flaw in the Debtor's reliance on this rule is that the Movant is not seeking any relief that would violate the terms of the confirmed plan.  The automatic vesting provisions of 11 U.S.C. § 1327(b) and (c) vest property of the estate in the debtor, but do not define property of the estate; that remains the province of 11 U.S.C. § 541.  Similarly, a chapter 13 plan cannot simply identify property that is not property of the estate, provide that such property shall vest in the debtor upon confirmation, and rely on a lack of objections to effectuate that result.  Pursuant to 11 U.S.C. § 1322(b)(9), the plan may provide for vesting of property of the estate in the debtor or any other entity upon confirmation or at a later time; the reverse, however, is not the case.  A proceeding to recover money or property from a third party must be by adversary proceeding.

- 8 -

*See* Fed. R. Bankr. P. 7001(1). Moreover, an action to recover property, even one resolved by default, requires legal grounds supporting a judgment.

In addition, the confirmed plan in this case does not purport to vest the Movant's interests in the retirement accounts in the Debtor. The Debtor's actual unstated position is that the Debtor has no property interest of her own in the accounts, and therefore had only a claim against them that she failed to raise through the claims resolution and plan confirmation processes. As discussed above, however, the equitable ownership of those assets passed to the Movant by virtue of the final decree entered in the state court pursuant to applicable state domestic relations law. Therefore, her right to those assets was unaffected by the plan or the confirmation order. To whatever extent she was entitled to a QDRO prior to confirmation, she still is. That is a matter for the same state court that entered the final divorce decree in the first place.

D. **The 1994 Amendments to the Bankruptcy Code Concerning Nondischargeability of Non-Support Domestic Relations Claims in Chapter 7, but Not Chapter 13, Did Not Abrogate the Sixth Circuit's Holding in *In re McCafferty* and Is Also Immaterial to the Relief From Stay Motion.**

The Debtor argues that *McCafferty* is no longer good law for the proposition that a division of a retirement account in a prepetition divorce decree is impervious to the impact of a spouse's bankruptcy case, discharge, or reorganization plan. The Debtor argues that the addition of Section 523(a)(15) to the Bankruptcy Code by the Bankruptcy Reform Act of 1996, Pub. L. 103-394, 108 Stat. 4106, legislatively overruled *McCafferty's* holding.

Section 523(a)(15) provides that:

"any debt . . . to a spouse, former spouse or child of the debtor and not [a domestic support obligation already excepted from discharge from Section 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record"

is not discharged. Such debts are commonly referred to as "property settlements," although that phrase may at times be misleading or even inaccurate.

- 9 -

While this provision expands the list of nondischargeable claims for a divorcing or divorced nondebtor spouse, Section 1328 of the Bankruptcy Code takes this benefit away in chapter 13 cases, such as the present one, by only excluding from discharge certain claims identified by Section 523(a), including domestic support obligation debts under Section 523(a)(5), but excluding the newer exception found in Section 523(a)(15) for non-support domestic relations claims. The latter discharge exception -- which applies to what are commonly, but perhaps at times misleadingly, referred to as domestic relations "property settlements" -- applies only in chapter 7 cases. The Debtor argues, therefore, that Congress has "occupied the field" for cases filed after the effective date of the Bankruptcy Reform Act of 1994 with respect to the discharge of non-support "debts" a debtor owes a spouse for portions of his retirement accounts. The Debtor suggests that Congress has decided that while such claims are dischargeable in chapter 7 cases, they are not in chapter 13. The question is, therefore: To what extent were the relevant holdings of the Sixth Circuit Court of Appeals in *McCafferty* abrogated for chapter 13 cases, such as this one, by the 1994 amendments to the Bankruptcy Code, which enacted 11 U.S.C. § 523(a)(15)?

While the Sixth Circuit decided *McCafferty* in 1996, the underlying bankruptcy case was filed on October 28, 1993, so the pre-1994 Reform Act Bankruptcy Code was the controlling version for the purposes of that case and the Sixth Circuit, quite appropriately, ignored Section 523(a)(15). That section, first added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994, Pub. L. 103-394, 108 Stat. 4106, and since revised, currently provides that:

> "a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of [the Bankruptcy Code] does not discharge an individual debtor from any debt … to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a

- 10 -

> court of record, or a determination made in accordance with State or territorial law
> by a governmental unit."

11 U.S.C. §523(a)(15).  A general chapter 13 discharge pursuant to 11 U.S.C. § 1328(a),

however, will nevertheless discharge such a debt.

In *McCafferty*, a chapter 7 individual debtor filed an adversary complaint against his

former wife seeking to discharge determination regarding his obligation to turn over to her a

portion of his state government pension pursuant to a final decree of divorce entered by an Ohio

domestic relations court seven months prior to the bankruptcy filing.  Given the absence of

Section 523(a)(15) in the Bankruptcy Code at the time, there was no statutory provision

governing the dischargeability of debts incurred by the debtor in connection with divorce or

separation other than debts in the nature of support.[2]  Since the Bankruptcy Code allows for

discharge of any debts not specifically excepted from discharge, the bankruptcy court and district

court in *McCafferty* both ruled that the obligation was dischargeable, since it was not in the

nature of a support award.  The Sixth Circuit agreed that it was not in the nature of a support

award and therefore could not be held nondischargeable on that basis.  But, as discussed in

Section B, *supra*, *McCafferty* nevertheless reversed the bankruptcy and district courts and ruled

that the debtor's obligation to turn over the funds remained enforceable -- and not discharged --

notwithstanding the bankruptcy.

The Debtor misunderstands the legal theory underpinning *McCafferty*, and the Ohio

Supreme Court decision (*Erb*) upon which it relies.  This misunderstanding is what may inform

the Debtor's argument that the addition of Section 523(a)(15)'s exception to discharge in chapter

7 cases, but not chapter 13 cases, makes a difference.  The confusion stems from the fact that

---

[2]  11 U.S.C. § 523(a)(5), rendering domestic support awards nondischargeable, did exist in the Bankruptcy Code at the time, but the bankruptcy, district, and Sixth Circuit courts in *McCafferty* all agreed that that provision did not apply.  *See id.* at 195.

*McCafferty's* and *Erb's* holding is that the nondebtor spouse obtains a vested property right in a defined share of the debtor's retirement account upon entry of the divorce decree. By contrast, Section 523(a) deals solely with the dischargeability of *debts*. "The term debt means liability on a claim." 11 U.S.C. § 101(12). Claims are a "right to payment" or "right to an equitable remedy for breach of performance." 11 U.S.C. § 101(5). While claims are defined broadly, they are distinct from property rights. *See In re Skorich: Ford v. Skorich*, 482 F.3d 21, 26 (1st Cir. 2007). Property rights are fixed by state law, *see Butner*, and they do not vary based upon amendment to the provisions of the Bankruptcy Code governing nondischargeability of certain debts.

The difference between the chapter 7 case in *McCafferty* and the chapter 13 case here is irrelevant. In both pre-1994 chapter 7 cases (like *McCafferty*) and contemporary chapter 13 cases (like this one), "debts" incurred incident to property settlements in divorce or separation agreements were and continue to be dischargeable. The issue is what is a "debt"? The addition of Section 523(a)(15) to the Bankruptcy Code in 1994 did not change Ohio's domestic relations law and did not create a federal interest requiring a different result within the rule of *Butner*, certainly not one making divorce obligations *easier* to escape in bankruptcy than existed before the 1994 amendments.

This Court finds that the introduction of 11 U.S.C. § 523(a)(15) in 1994 did not abrogate *McCafferty*, and that the facts of *McCafferty* are nearly squarely on point with the facts of this case, even though the procedural posture is different. For *McCafferty* to be abrogated, at least within Ohio, the underlying property or domestic relations law of Ohio would need to change, or Congress would need to make a rule superseding it for the purposes of defining property of the estate and of the debtor. 11 U.S.C. § 523(a)(15) is not such a rule, even by implication; it affects only dischargeability, not the definition of property of the estate.

- 12 -

Moreover, a careful reading of the divorce decree in this case reveals that the division of the retirement accounts was a division of property rights, not the creation of a debt or claim on account of, or to compensate for, the parties' disparate property rights. The Movant was granted a fifty percent share of the Debtor's Hewitt Associates Cash Balance Plan. While the actual transfer of the assets awaits entry of a QDRO (after relief from stay), the lack of a QDRO in no way prevents the vesting of the parties' property rights. *See In re Lawson: Corzin v. Lawson*, No. 15-5094, 2017 WL 1207521, *9 (Bankr. N.D. Ohio Mar. 31, 2017) (even prior to the entry of a final decree of divorce, Ohio domestic relations law creates in each spouse a present contingent interest in all property of the marriage); *In re Warner: Gertz v. Warner*, No. 15-5115, 2017 WL 1379341, *6 (Bankr N.D. Ohio Apr. 14, 2017) (same). Moreover, a percentage division of a retirement account implies that each party will enjoy gains and suffer losses -- the epitome of ownership.

The division of the Frontier Communications 401(k) makes the property rights attributes (as opposed to the alternative debt/claim attributes) even clearer. Here, the domestic relations court did not divide the plan evenly, but rather awarded the Movant a share of $33,912, which "shall be *credited with gains and debited with losses* which occur between the date of the filing of this Judgment Entry Decree of Divorce and the date of transfer by the Plan Administrator." The Debtor owes the Movant no debt, [3] dischargeable or otherwise; he holds *her assets* in trust for her benefit.

---

[3] The fact that the right to a division of the retirement accounts is not a debt of the Debtor -- or a claim of the Movant -- explains why it was not included in the Movant's proof of claim and, more important, why it did not have to be.

**E.  The Movant's Interest in Her Property Rights in the Debtor's Retirement Accounts Is Not Being Adequately Protected and, Therefore, Cause Exists for Granting Her Motion for Relief From Stay.**

The Movant's property rights in the Debtor's retirement funds are being held hostage by the automatic stay.  The Debtor has no legal rights to them, nor does the estate.  Therefore, cause exists pursuant to 11 U.S.C. § 362(d)(1) to grant relief from the automatic stay to allow the Movant to proceed in state court to obtain the QDRO necessary to obtain the distribution of her assets from their current custodian.  The Motion will, therefore, be granted.

**CONCLUSION**

In light of the foregoing, the Court will enter a separate order consistent with this Memorandum Decision granting the Motion for Relief from Stay (Docket No. 79).

# # #

## CERTIFICATE OF SERVICE

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

Bruce Hall       bhall160229@gmail.com, bh6236@yahoo.com

Keith Rucinski       efilings@ch13akron.com, krucinski@ecf.epiqsystems.com

Julie E. Rabin       mrabin@rabinandrabin.com


And by regular U.S. mail, postage prepaid, on:

Mark David Jeffers
4744 Sleepy Hollow Road
Medina, OH 44256